IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

YVETTA H.,[1]
    Plaintiff,

v.

COMMISSIONER OF
SOCIAL SECURITY,
    Defendant.

Case No. 2:21-cv-2904
Marbley, J.
Litkovitz, M.J.

REPORT AND
RECOMMENDATION

Plaintiff Yvetta H. brings this action pursuant to 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security (Commissioner) denying her application for disability insurance benefits (DIB). This matter is before the Court on plaintiff's Statement of Errors (Doc. 14) and the Commissioner's response (Doc. 18).

**I. Procedural Background**

Plaintiff filed her DIB application in June 2017 alleging disability since November 17, 2015, due to major depressive disorder and generalized anxiety disorder. (Tr. 220-27, 264). Plaintiff's application was denied initially and on reconsideration. Plaintiff, through counsel, sought and was granted a *de novo* hearing before administrative law judge (ALJ) Jeannine Lesperance on December 5, 2019. Plaintiff and a vocational expert (VE) appeared and testified. (Tr. 44-76). At the hearing, the ALJ acknowledged that plaintiff was also eligible for Medicare Qualified Government Employee (MQGE) benefits based on her position with The Ohio State University. (Tr. 15, 47-48). On February 14, 2020, the ALJ issued an unfavorable decision.

---

[1] Pursuant to General Order 22-01, due to significant privacy concerns in social security cases, any opinion, order, judgment or other disposition in social security cases in the Southern District of Ohio shall refer to plaintiffs only by their first names and last initials.

(Tr. 12-37). The Appeals Council denied plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. (Tr. 1-6).

## II. Analysis

### A. Legal Framework for Disability Determinations

To qualify for disability benefits, a claimant must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 423(d)(1)(A). The impairment must render the claimant unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy. 42 U.S.C. § 423(d)(2).

Regulations promulgated by the Commissioner establish a five-step sequential evaluation process for disability determinations:

> 1) If the claimant is doing substantial gainful activity, the claimant is not disabled.
>
> 2) If the claimant does not have a severe medically determinable physical or mental impairment – *i.e.*, an impairment that significantly limits his or her physical or mental ability to do basic work activities – the claimant is not disabled.
>
> 3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.
>
> 4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.
>
> 5) If the claimant can make an adjustment to other work, the claimant is not disabled. If the claimant cannot make an adjustment to other work, the claimant is disabled.

*Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009) (citing 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 404.1520(b)-(g)). The claimant has the burden of proof at the first four

steps of the sequential evaluation process. *Id.*; *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548 (6th Cir. 2004). Once the claimant establishes a prima facie case by showing an inability to perform the relevant previous employment, the burden shifts to the Commissioner to show that the claimant can perform other substantial gainful employment and that such employment exists in the national economy. *Rabbers*, 582 F.3d at 652; *Harmon v. Apfel*, 168 F.3d 289, 291 (6th Cir. 1999).

### B. The Administrative Law Judge's Findings

The ALJ first acknowledged that the Commissioner had issued a prior unfavorable decision on a distinct DIB claim on November 16, 2015 (the day prior to the alleged onset date in this case). (Tr. 15, referring to Tr. 77-93). In that decision, the Commissioner had found that plaintiff had the severe impairments of major depression with migraine headaches and an anxiety disorder. (Tr. 83). The ALJ determined that she was not bound by the prior ALJ's findings because new and additional evidence demonstrated that plaintiff was less mentally and physically limited than the Commissioner had previously determined. (Tr. 15-16 (citing Acquiescence Rulings 98-3(6), 98-4(6), *Dennard v. Sec'y of H.H.S.*, 907 F.2d 598 (6th Cir. 1990), and *Drummond v. Comm'r of Soc. Sec.*, 126 F.3d 837 (6th Cir. 1997))).[2] The ALJ then applied the sequential evaluation process and made the following findings of fact and conclusions of law:

1. [Plaintiff] last met the insured status requirements for a period of Disability and [DIB] on September 30, 2016 (Exhibit B11D/1).

---

[2] In *Earley v. Comm'r of Soc. Sec.*, the Sixth Circuit noted some "overstatement" in its decision in *Drummond* with respect to the application of *res judicata* in administrative proceedings. 893 F.3d 929, 933 (6th Cir. 2018). The court clarified that "[w]hen an individual seeks disability benefits for a distinct period of time, each application is entitled to review." *Id.* At the same time, the court acknowledged that "it is fair for an [ALJ] to take the view that, absent new and additional evidence, the first administrative law judge's findings are a legitimate, albeit not binding, consideration in reviewing a second application." *Id.*

3

2. [Plaintiff] meets the insured status requirements of the Social Security Act for entitlement to a period of MQGE benefits through June 30, 2021 (Exhibit B15D/2).

3. Based on the totality of the evidence, [plaintiff] has not engaged in SGA since November 17, 2015, the alleged onset date of disability (20 CFR 404.1571 *et seq.*).

4. Based on the objective medical evidence, [plaintiff] has the following medically determinable impairments as of the alleged onset date of disability: migraine headaches, hyperlipidemia, hypertension, myopia, anxiety and depressive disorders, and acute cystitis, urinary tract infection, and vaginitis (20 CFR 404.1520(c)).

5. Based on the objective medical evidence, [plaintiff] does not have an impairment or combination of impairments that significantly limits the ability to perform basic work-related activities for 12 consecutive months as of the alleged onset date of disability. Therefore, [plaintiff] does not have a severe impairment or combination of impairments as of the alleged onset date of disability (20 CFR 404.1520(c)).

6. Because [plaintiff] does not have a severe impairment or combination of impairments, she is not disabled as defined in the Social Security Act at any time from November 17, 2015, the alleged onset date of disability, through the date of this decision (20 CFR 404.1520(c)).

(Tr. 19-37) (footnote omitted).

### C. Judicial Standard of Review

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g) and involves a twofold inquiry: (1) whether the findings of the ALJ are supported by substantial evidence, and (2) whether the ALJ applied the correct legal standards. *See Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009); *see also Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007).

The Commissioner's findings must stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citing *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance. . . ." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). In

deciding whether the Commissioner's findings are supported by substantial evidence, the Court considers the record as a whole. *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

The Court must also determine whether the ALJ applied the correct legal standards in the disability determination. Even if substantial evidence supports the ALJ's conclusion that the plaintiff is not disabled, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers*, 582 F.3d at 651 (quoting *Bowen*, 478 F.3d at 746).

### D. Specific Errors[3]

Plaintiff argues that upon discovering her eligibility for MQGE benefits at her hearing, the ALJ should have remanded her claim back to the state agency to consider whether plaintiff could establish disability through June 30, 2021. Plaintiff notes that the ALJ relied on the state agency reviewers' opinions that there was insufficient evidence to support her DIB claim, for which her date last insured was September 30, 2016; but these reviewers did not consider evidence through June 30, 2021—the date relevant to MQGE benefits.[4] Plaintiff points to medical evidence from 2017 forward that she believes demonstrates that her depression, anxiety, insomnia, and migraines caused more than a *de minimis* effect on her ability to work. Plaintiff also points to the opinion of her primary care physician between 2002 and 2018, Cynthia Reese, M.D. (*See* Tr. 462-66). Plaintiff argues that Dr. Reese's opinion demonstrates that plaintiff's impairments had more than a *de minimis* effect on her ability to work. Plaintiff argues that the state agency reviewers' opinions, on which the ALJ relied, failed to consider 2017 and later

---

[3] Plaintiff challenges the ALJ's severity assessment at step two of the sequential evaluation related to her depression and anxiety (including insomnia) and migraines. Any arguments related to her other impairments are deemed waived. *See Watts v. Comm'r of Soc. Sec.*, No. 1:16-cv-319, 2017 WL 430733, at *11 (S.D. Ohio Jan. 31, 2017) (argument waived where plaintiff did not "develop it legally or factually in the Statement of Errors"), *report and recommendation adopted*, 2017 WL 680538 (S.D. Ohio Feb. 21, 2017).
[4] On reconsideration, the state agency had—but explicitly did not consider—a February 2017 record from plaintiff's primary care physician, Cynthia Reese, M.D. (*See* Tr. 108-09).

5

medical evidence or Dr. Reese's opinion. Because the ALJ did not rely on any medical opinion based on this more recent medical evidence, plaintiff argues that the ALJ's finding at step two of the sequential evaluation was based on her inappropriate lay interpretation of raw medical data. Finally, plaintiff argues that the ALJ erred in evaluating the consistency of her subjective symptoms with the record by failing to consider her strong work history.

The Commissioner responds that the ALJ's decision reflects that she considered both the medical record through June 30, 2021 and Dr. Reese's opinion. The Commissioner argues that the ALJ pointed to substantial evidence supporting her conclusions that Dr. Reese's opinion was not persuasive, and plaintiff's impairments were not severe. The Commissioner argues that there is no authority requiring remand by the ALJ to the state agency where state agency reviewers do not review all of the medical evidence in the record, and the ALJ sufficiently developed the record. Finally, the Commissioner argues that the ALJ was not required to affirmatively consider work history as a part of her evaluation of plaintiff's subjective symptoms and otherwise fulfilled her duty under 20 C.R.F. § 404.1529.

1. The ALJ's decision

The ALJ found that new and material evidence demonstrated that plaintiff was "less mentally and physically limited than determined in the prior ALJ decision and ha[d] no mental and physical functional limitations and restrictions as of the alleged onset date of disability." (Tr. 16). In support of this conclusion, the ALJ relied on (and repeated) several general observations throughout her decision. The ALJ highlighted January and April 2019 notes from Nadica Stoilova, M.D., plaintiff's primary care physician after Dr. Reese, that plaintiff was "healthy-appearing." (Tr. 21, 26, and 28, referring to Tr. 445, 452). The ALJ remarked that plaintiff exercised heavily, including spinning three times a week for an hour at a time and lifting

6

weights three times a week for half an hour at a time. (Tr. 22-25, 28-29, 31, 33, and 35, referring to Tr. 384, 397, 444, 448, and 451). The ALJ noted the facts that plaintiff lived alone, could use the internet, worked part-time in real estate, traveled out of the country, and seemed to easily understand and closely follow her hearing. (*See* Tr. 23-25, 31, 33, and 35, referring to Tr. 389, 392, 416, 444, 448, and 451). The ALJ referenced plaintiff's "cooperative and pleasant" manner noted in medical records and at her hearing. (Tr. 24, 30, 33, and 35, referring to Tr. 384, 397, 423, 425, 449, and 451). The ALJ noted that plaintiff presented as alert, awake, and oriented, with normal attention span, concentration, and recent and remote memory. (Tr. 24, 30, 33, and 35, referring to Tr. 384, 397, 408, 410, 418, 425, 445, and 452).

Related to headaches, specifically, the ALJ noted the lack of evidence showing plaintiff met the 12-month durational requirements under 20 C.F.R. § 404.1509. The ALJ explained that the record lacked "objective medical evidence such as diagnostic imaging results documenting abnormality of [plaintiff]'s brain or head." (Tr. 21). The ALJ then cited several records reflecting that plaintiff's headaches were not chronic or intractable but, rather, were controlled, responsive to medication, and infrequent. (*Id.*, referring to Tr. 383, 396 (February 2017 and February 2018, Dr. Reese: only one headache per month, occasionally relieved by Aleve); Tr. 400-401 (January 2018, Dr. Reese: Maxalt helps, headaches not intractable); Tr. 411 (August 2017, Dr. Reese: headaches stable, not intractable); Tr. 417 (May 2018, sleep specialist Ryan Donald, M.D.: occasional morning headaches); Tr. 424 (October 2017, pulmonary specialist Susan Borchers, M.D.: no reported headaches or dizziness); and Tr. 452 (January 2019, Dr. Stoilova: headaches neither frequent nor severe)). The ALJ concluded that there was "no evidence of functional limitations and restrictions" related to plaintiff's migraines that lasted or were expected to last for a continuous period of at least 12 months. (*Id.*).

Related to plaintiff's mental impairments, the ALJ acknowledged various reports of symptoms throughout the record (Tr. 21, referring to Tr. 371 (February 2014, Dr. Reese: depressed mood and flat affect)[5]; Tr. 383 (February 2017, Dr. Reese: "feeling exhausted and sleeping a lot in past 2 months, slight mood"); Tr. 394 (May 2018, Dr. Reese: anxiety reported, depressed mood/flat affect); Tr. 406-09 (September and October 2017, Dr. Reese: nighttime anxiety and "big head and slow to react" reported, depressed mood and flat affect, started Trazodone for anxiety); Tr. 416-417 (May 2018, Dr. Donald: issues falling asleep and racing thoughts reported); Tr. 423 (October 2017, Dr. Borchers: issues falling asleep reported); Tr. 443-45 (April 2019, Dr. Stoilova: increased anxiety (helped by medication) reported, anxious mood and flat affect); and Tr. 450 (February 2019, Dr. Stoilova: depression and anxiety reported after plaintiff stopped medications for six months).

The ALJ contrasted these records with others that showed plaintiff's normal cognition, mood, and affect.  (Tr. 23, referring to Tr. 384, 397-98 (February 2017 and February 2018, Dr. Reese: normal cognitive exam, mood, and affect); Tr. 406, 408, and 410 (August-October 2017, Dr. Reese: cognitive function intact despite depressed mood and affect); and Tr. 419 (May 2018, Dr. Donald: no pressured or tangential speech, normal mood and affect).  The ALJ also highlighted records showing plaintiff's good judgment despite abnormal mental status and the fact that plaintiff understood her medications.  (Tr. 23-25, 31, 33, and 35, referring to Tr. 383, 389, 445, and 452 (February 2017, July 2018, January 2019, and April 2019, Drs. Reese and Stoilova)).  The ALJ cited Personal Health Questionnaire (PHQ-2) depression screening scores reflecting either no or only mild depression.  (Tr. 26, referring to Tr. 445, 448 (January and February 2019, Dr. Stoilova).  The ALJ also cited records in which plaintiff's mental

---

[5] This record predates the alleged onset date.

8

impairments were described as controlled, improved, mild, and/or not present. (*Id.*, referring to Tr. 383 (February 2017, Dr. Reese: "improved anxiety, denies depression"); Tr. 395 (May 2018, Dr. Reese: major depressive disorder classified as "[m]ild" and "controlled"); Tr. 401 (January 2018, Dr. Reese: anxiety and depression improved with medication), Tr. 405 ( November 2017, Dr. Reese: depression "stable"), Tr. 409 (September 2017, Dr. Reese: depression "mild" and anxiety not noted), Tr. 417 (May 2018, Dr. Donald: plaintiff endorsed anxiety related to sleep and "controlled" depression); Tr. 424 (October 2017, Dr. Borchers: plaintiff denied depression or memory loss), and Tr. 449 (February 2019, Dr. Stoilova: depression and anxiety "well controlled on Buspar")).

The ALJ also noted the fact that plaintiff did not comply with counseling recommendations and self-discontinued medications. (*Id.*, referring to Tr. 408 (September 2017, Dr. Reese: plaintiff ran out of psychiatrist prescribed medications); Tr. 431 (letter from plaintiff's former psychologist establishing lack of treatment since June 2015); and Tr. 450 (January 2019, Dr. Stoilova: plaintiff reported being off medications for six months, at which point symptoms returned)). The ALJ also noted an Epworth Sleepiness Scale[6] score of only 1. (Tr. 22, 28-29, referring to Tr. 417). Finally, the ALJ pointed to several records suggesting that plaintiff's mental impairments were tied to situational stressors as opposed to lasting continuously. (Tr. 26, referring to Tr. 408, 410 (August and September 2017, Dr. Reese: plaintiff reported increased stress) and Tr. 482 (October 2012 counseling record noting presence of psychosocial and environmental problems)[7]). The ALJ concluded that there was "no evidence of functional limitations and restrictions" related to plaintiff's depression and anxiety. (Tr. 26).

---

[6] *See* https://epworthsleepinessscale.com/about-the-ess/ (last visited June 22, 2022) ("[T]he reference range of 'normal' ESS scores is zero to 10.").
[7] This record predates the alleged onset date.

9

2. <u>Standard of law</u>

The regulations define a "severe" impairment or combination of impairments as one that significantly limits the physical or mental ability to perform basic work activities. 20 C.F.R. § 404.1520(c). Basic work activities relate to the abilities and aptitudes necessary to perform most jobs, such as the ability to perform physical functions and the mental abilities to use judgment, respond to supervisors, and deal with changes in the work setting. 20 C.F.R. § 404.1522(b). An impairment is considered "severe" unless "the [claimant's] impairment(s) has no more than a minimal effect on his or her physical or mental ability(ies) to perform basic work activities." Social Security Ruling (SSR) 85-28,[8] 1985 WL 56856, at *3. "[D]isability is determined by the functional limitations imposed by a condition, not the mere diagnosis of it." *Hill v. Comm'r of Soc. Sec.*, 560 F. App'x 547, 551 (6th Cir. 2014). *See also Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988) (holding that the diagnosis of an impairment "says nothing about the severity of the condition"). The claimant's burden of establishing a "severe" impairment at step two is "*de minimis*." *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 325 (6th Cir. 2015) (citing *Higgs*, 880 F.2d at 862). "[A]n impairment can be considered not severe only if it is a slight abnormality that minimally affects work ability regardless of age, education, and experience." *Id.* (quoting *Higgs*, 880 F.2d at 862). Step two is "intended to 'screen out totally groundless claims.'" *Kestel v. Comm'r of Soc. Sec.*, 756 F. App'x 593, 597 (6th Cir. 2018) (quoting *Nejat v. Comm'r of Soc. Sec.*, 359 F. App'x 574, 576 (6th Cir. 2009)). Any doubt at step two "should be resolved in favor of continuing the sequential evaluation process. . . ." *Duffy v. Astrue*, No. 2:12-

---

[8] "Social Security Rulings do not have the force and effect of law, but are 'binding on all components of the Social Security Administration' and represent 'precedent final opinions and orders and statements of policy and interpretations' adopted by the Commissioner." *Ferguson v. Comm'r of Soc. Sec.*, 628 F.3d 269, 272 n.1 (6th Cir. 2010) (quoting 20 C.F.R. § 402.35(b)(1)).

cv-57, 2012 WL 4513733, at *4 (S.D. Ohio Oct. 1, 2012) (citing SSR 85-28, 1985 WL 56856), *report and recommendation adopted*, 2013 WL 361004 (S.D. Ohio Jan. 29, 2013).

3. <u>Analysis</u>

For the reasons explained below, the Court finds that neither of plaintiff's statements of error has merit, and the ALJ's decision at step two of the sequential evaluation was based on substantial evidence. While plaintiff's first statement of error includes multiple arguments, the Court considers her procedural argument first.

a. *Development of the record*

Plaintiff's first statement of error asserts the ALJ was required to remand her claim back to the state agency upon the discovery of its failure to consider evidence within the MQGE benefit period of eligibility. There is no blanket requirement, however, that a case be remanded where medical evidence postdating a state agency's review is added to the record. *See Spicer v. Comm'r of Soc. Sec.*, 651 F. App'x 491, 493-94 (6th Cir. 2016) (quoting *Blakley*, 581 F.3d at 409) ("[A]n ALJ may rely on the opinion of a consulting or examining physician who did not have the opportunity to review later-submitted medical records if there is 'some indication that the ALJ at least considered these facts' before assigning greater weight to an opinion that is not based on the full record."). Similarly, a remand to the state agency based on its failure to apply the correct date last insured—resulting in the state agency's failure to consider any evidence after that incorrect date—is not required where "the ALJ's decision reflects that [s]he made an independent determination based on all the medical evidence and that h[er] analysis spanned the entire record." *Browning v. Saul*, No. 2:20-cv-12, 2021 WL 1169370, at *8 (E.D. Tenn. Mar. 26, 2021) (citing *Gibbens v. Comm'r of Soc. Sec.*, 659 F. App'x 238, 247-48 (6th Cir. 2016)) (affirming the ALJ's reliance on the nonexamining state agency consultants' opinions, even

11

where the parties agreed that those consultants "[had] relied upon an improper date last insured"), *aff'd sub nom. Browning v. Comm'r of Soc. Sec.*, No. 21-5576, 2022 WL 2135560 (6th Cir. Mar. 15, 2022). The ALJ's decision demonstrates that she considered all of the relevant medical evidence in the record, including that which postdated plaintiff's date last insured for DIB.

In addition, a disability claimant bears the ultimate burden to prove by sufficient evidence that she is entitled to disability benefits. 20 C.F.R. § 404.1512(a). The burden is on the claimant to furnish medical and other evidence about her impairments and the effects of those impairments on her ability to work. *Id.* "Only under special circumstances, i.e., when a claimant is without counsel, is not capable of presenting an effective case, and is unfamiliar with hearing procedures, does an ALJ have a special, heightened duty to develop the record." *Trandafir v. Comm'r of Soc. Sec.*, 58 F. App'x 113, 115 (6th Cir. 2003) (citing *Duncan v. Sec'y of H.H.S.*, 801 F.2d 847, 856 (6th Cir. 1986); *Lashley v. Sec'y of H.H.S.*, 708 F.2d 1048, 1051-52 (6th Cir. 1983)). *See also Wilson v. Comm'r of Soc. Sec.*, 280 F. App'x 456, 459 (6th Cir. 2008) ("Absent such special circumstances—which do not exist in this case—this court repeatedly affirms that the claimant bears the ultimate burden of proving disability."). Given the absence of such special circumstances here and the ALJ's clear consideration the medical evidence through 2019 throughout her decision, the Court finds that the ALJ's decision to not remand plaintiff's case to the state agency was based on substantial evidence. Plaintiff's first statement of error should be overruled.

b. *Severe impairments*

In connection with her first statement of error, plaintiff argues that because the state agency reviewers did not render an opinion based on post-September 2016 DIB date last insured

12

evidence (i.e., the MQGE-relevant evidence), and the ALJ found Dr. Reese's opinion unpersuasive, the ALJ must have based her severe-impairment decision on her raw interpretation of medical data. In her second statement of error, plaintiff argues that the ALJ improperly assessed the consistency of her alleged symptom severity with the record evidence by failing to explicitly address her excellent work history.

The ALJ's finding of no severe impairments at step two of the sequential evaluation was based on substantial evidence. An ALJ is not required to credit a claimant's "subjective complaints or medical assessments not supported by the medical evidence or the record as a whole" in making her decision at step two of the sequential evaluation process. *Long v. Apfel*, 1 F. App'x 326, 331 (6th Cir. 2001). *See also Weckbacher v. Comm'r of Soc. Sec.*, No. 2:11-cv-659, 2012 WL 2809697, at *9 (S.D. Ohio July 10, 2012) (same). An ALJ must, however, "make a connection between the evidence relied on and the conclusion reached" if she does not adopt a particular medical opinion. *Tucker v. Comm'r of Soc. Sec.*, c, 226 (6th Cir. 2019) (RFC determination).

Plaintiff points to Dr. Reese's 2019 opinion (Tr. 462-66) as demonstrating that her migraines and mental health impairments were severe. Plaintiff, however, does not challenge the ALJ's assessment of this opinion, and the ALJ was not required to rely on an unsupported medical opinion in making her decision at step two of the sequential evaluation process. *Long*, 1 F. App'x at 331. The ALJ found Dr. Reese's opinion unpersuasive for various reasons.[9] (*See* Tr. 31-34). The ALJ noted the fact that Dr. Reese identified only one symptom related to depression ("[s]leep disturbance"), even though Dr. Donald, a sleep specialist, believed that plaintiff's sleep issues were not likely related to her mental impairments. (Tr. 32, referring to Tr.

---

[9] The ALJ found the opinion persuasive only to the extent that Dr. Reese opined that plaintiff had "no limitations in understanding, remembering, or applying information. . . ." (Tr. 31-32, referring to Tr. 464).

13

463 and 419 ("I do not feel her insomnia is primarily psychophysiologic[al.]")). The ALJ noted that Dr. Reese identified only one symptom related to anxiety ("[a] persistent irrational fear of a specific object, activity, or situation which results in a compelling desire to avoid the dreaded object, activity, or situation") but that the record did not reflect evidence of plaintiff having any such phobia. (*Id.*, referring to Tr. 463). The ALJ noted that while Dr. Reese endorsed a moderate limitation in plaintiff's ability to adapt or manage due to anxiety attacks and migraines, neither impairment was "well documented as chronic or uncontrolled." (*Id.*, referring to Tr. 464). The ALJ also questioned how Dr. Reese could remark both that plaintiff experienced these impairments "for many years" (Tr. 464) (and, thus, while she was still performing her highly skilled past work) and also that plaintiff had "not been able to adapt" (*id.*). (Tr. 32).

The ALJ identified several other unsubstantiated conclusions in Dr. Reese's report. Dr. Reese assumed that plaintiff could only maintain attention and concentration for less than one hour based solely on the fact that it was longest that she and plaintiff had ever interacted (*id.*, referring to Tr. 465), that plaintiff could only "sometimes" interact with supervisors based on an experience with a single supervisor and notwithstanding Dr. Reese's conclusions that plaintiff could maintain socially appropriate behavior and respond appropriately to changes in the work setting (*id.*, referring to Tr. 465-66), and that plaintiff would miss one day of work per month (*id.*, referring to Tr. 466). Finally, the ALJ contrasted Dr. Reese's opinion with the medical evidence summarized above (*see supra* pp. 6-9) showing that plaintiff's impairments and symptoms thereof, individually or in combination, were not severe. (Tr. 32-34).

Plaintiff does not otherwise point to evidence in the record that supports any functional restrictions or limitations related to her impairments. *See Long*, 1 F. App'x at 331. ("When doctors' reports contain no information regarding physical limitations or the intensity, frequency,

14

and duration of pain associated with a condition, this court has regularly found substantial evidence to support a finding of no severe impairment."). Plaintiff seems to argue that the ALJ was *required* to rely on a medical source opinion to reach her decision on whether plaintiff had severe impairments. The cases that plaintiff cites in this part of her argument, however, do not stand for this proposition. *Simpson v. Comm'r of Soc. Sec.*, 344 F. App'x 181, 194 (6th Cir. 2009) (ALJ erred by rejecting a medical opinion as "implausible" based on the ALJ's own judgment of the medical data); *Rogers v. Comm'r of Soc. Sec.*, No. 4:18-cv-10561, 2019 WL 490384, at *18 (E.D. Mich. Jan. 7, 2019) (an ALJ should not ignore a medical provider's conclusion based on her own interpretation of the medical data), *report and recommendation adopted*, 2019 WL 480374 (E.D. Mich. Feb. 7, 2019) (same).

Rather than interpreting medical evidence, the ALJ here simply found a *lack* of medical evidence relevant to functional limitations or restrictions.[10] (*See* Tr. 21, 26). The ALJ acknowledged that plaintiff "has a history of severe mental impairments and related symptoms. . . ." (Tr. 34). However, there is no medical evidence in the record to shed light on plaintiff's impairments from the alleged onset date of November 17, 2015 through September 30, 3016, plaintiff's date last insured for DIB.

Plaintiff does summarize portions of the 2017 and later medical evidence that she argues carry her *de minimis* burden at step two of the sequential evaluation. (*See* Doc. 14 at PAGEID 541-46). The ALJ, however, considered these records and fairly identified aspects which substantially support a finding of no more than minimal associated functional limitations or restrictions. (*See, e.g.*, Tr. 404-11 (August-November 2017 records from Dr. Reese noted

---

[10] It bears repeating that plaintiff does not challenge the ALJ's treatment of Dr. Reese's opinion, which is distinguishable from a situation in which an ALJ were to reject a conclusion reached in an otherwise persuasive medical opinion.

15

plaintiff's depressed mood and flat affect, anxiety disorder diagnosis, and related prescriptions but also that plaintiff's depression was mild, stable on medication, and tied to situational stressors; plaintiff had allowed herself to run out of her medications; and plaintiff's cognitive function remained intact); Tr. 394-401 (January-May 2018 records from Dr. Reese reflected that plaintiff still experienced anxiety and should seek counseling but also that plaintiff's medications helped her mental impairment and migraines, she exhibited normal mood/affect, and her depression remained stable and mild); Tr. 443-53 (2019 Dr. Stoilova records showed that plaintiff reported depression and anxiety, treated with medications, and exhibited as anxious but also that her medications were helpful, she maintained good insight and judgment, and she registered as having either no or mild depression based on the PHQ-2); Tr. 416-19 (Dr. Donald's May 2018 sleep consultation record reflected plaintiff's reported nightly insomnia but also his conclusion that it was not likely related to her mental impairments); Tr. 383, 396, and 400-403 (February 2017-February 2018 Dr. Reese records reflected anywhere from approximately weekly to monthly migraines but also that they were helped by Aleve and Maxalt, controlled, and not intractable); and Tr. 443-53 (2019 Dr. Stoilova records showed that plaintiff reported migraines but that they were neither frequent nor severe)). In sum, the ALJ's analysis demonstrated "a connection between the evidence relied on and the conclusion reached" with respect to step two of the sequential evaluation process. *Tucker*, 775 F. App'x at 226.

Finally, the ALJ was under no obligation to explicitly address plaintiff's work history in her assessment of the consistency of plaintiff's symptoms with the record. While a claimant's work history is part of the 20 C.F.R. § 404.1529(c)(3) analysis, it need not be articulated by the ALJ in her decision. The cases cited by plaintiff merely establish that work history may be a relevant consideration but not that it must be articulated. (*See* Doc. 14 at PAGEID 550-51).

16

Based on the foregoing, the Court finds that the ALJ's determination that plaintiff had no severe impairments was based on substantial evidence. Plaintiff's second statement of error should be overruled.

**IT IS THEREFORE RECOMMENDED** that the decision of the Commissioner be **AFFIRMED** and this case be closed on the docket of the Court.

Date: 6/30/2022

Karen L. Litkovitz
United States Magistrate Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

YVETTA H.,                                        Case No. 2:21-cv-2904
    Plaintiff,                                   Marbley, J.
                                             Litkovitz, M.J.
   v.

COMMISSIONER OF
SOCIAL SECURITY,
    Defendant.

**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), WITHIN 14 DAYS after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections WITHIN 14 DAYS after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas* v. *Arn*, 474 U.S. 140 (1985); *United States* v. *Walters*, 638 F.2d 947 (6th Cir. 1981).